**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**ROBERT G. PORTER,**

    **Plaintiff,**

vs.                                                **Case No.: 8:14-CV-633-T-17EAJ**

**CAROLYN COLVIN,
Acting Commissioner of Social
Security Administration,**

    **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to the Social Security Act ("the Act"), as amended, Title 42, United States Code, Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

After reviewing the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the administrative record, and the pleadings and memoranda submitted by the parties in this case, the undersigned recommends that the Commissioner's decision be affirmed and this case be dismissed.[1]

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler,

---

[1] The District Judge referred this matter to the undersigned for consideration and a Report and Recommendation. See Local Rule 6.01(a), M.D. Fla.

703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

## I. Background

On October 28, 2011, Plaintiff filed applications for SSI and DIB, alleging disability beginning May 23, 2011. (T 93, 187, 191) Plaintiff's applications were denied initially and upon reconsideration, and an administrative hearing was held via videoconference on May 30, 2013. (T 19, 44, 45, 64, 65) Sixty years old at the time of the hearing, Plaintiff has a high school education and past relevant work experience as a lawn sprayer and pest control worker. (T 101)

On June 18, 2013, an ALJ denied Plaintiff's application. (T 102) Although Plaintiff's severe impairments included depression, anxiety, and obesity, these impairments did not meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App. 1. (T 95-96) Despite these impairments, Plaintiff was determined to have a residual functional capacity ("RFC") for medium work with the following limitations: simple, unskilled work; low stress work meaning only occasional decision-making and occasional changes in the work setting; no interaction with the general public and occasional interaction with supervisors and co-workers. (T 97)

While finding Plaintiff unable to perform his past relevant work as a lawn sprayer and pest control worker, based on the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff was capable of performing jobs available in significant numbers in the national economy, such as hand packager, cleaning jobs, and salvage labor jobs. (T 101-02)  Accordingly, the ALJ concluded that Plaintiff was not disabled during the relevant period. (T 102)  On January 9, 2014, the Appeals Council denied review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (T 1-3)

The medical and other evidence has been reviewed in the ALJ's decision and will not be repeated here except as necessary to address the issues presented.

## II. Analysis

On appeal, Plaintiff contends that the ALJ erred by: (1) improperly rejecting the opinion of Plaintiff's treating psychologist; (2) not articulating explicit and adequate reasons for rejecting Plaintiff's subjective pain complaints; (3) not fully accommodating all of Plaintiff's limitations resulting from his moderate limitations in social functioning and concentration; and (4) posing an incomplete hypothetical to the VE.[2]

**A.**     Plaintiff asserts that the ALJ improperly discounted the opinion of Plaintiff's treating psychologist, Martin Greengrass, Ph.D. ("Dr. Greengrass").

When reviewing the Plaintiff's record, the ALJ is required to state with particularity the weight given to different medical opinions and the reasons therefor. Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam) (citation omitted).  Specifically, whenever a physician offers

---

[2] The issues are addressed according to the sequential review process for disability claims, not in the order presented in Plaintiff's memorandum of law.

a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178-79 (11th Cir. 2011).

The basic rule is that the ALJ must give a treating physician's opinion "substantial or considerable weight" unless there is good cause to disregard the opinion. Id. at 1179.  Good cause exists when (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records. Id.  Moreover, if the ALJ articulates good cause for discrediting the treating physicians' opinions, the ALJ is entitled to rely on a non-examining physician's opinion if it is consistent with the medical record and the treating physicians' underlying clinical findings. Flowers v. Comm'r of Soc. Sec., 441 F. App'x 735, 743 (11th Cir. 2011) (per curiam) (unpublished).

Dr. Greengrass began treating Plaintiff on June 14, 2011, and  Dr. Greengrass also treated Plaintiff on thirteen additional occasions between July 7, 2011 and March 12, 2013. (T 373-76, 523-26)  In an August 2011 report, Dr. Greengrass noted that Plaintiff was not able to return to his prior work but was not precluded from other work. (T 514-16) His mental status examination showed that: Plaintiff was alert; he was oriented times four; his behavior was appropriate for his age; his speech was appropriate; his mood was depressed but more anxious; his affect was anxious; his thought process was generally natural; he had no delusions or hallucinations; his judgment was usually good; he had some insight; and he had no apparent cognitive impairments. (T 514)  Plaintiff was able to

4

bathe himself, drive, and manage basic skills. (T 515)

In a February 1, 2012 report, however, Dr. Greengrass indicated that Plaintiff's primary diagnosis was panic disorder without agoraphobia and major depression. Dr. Greengrass stated that Plaintiff "is unable to work at his job, just thinking about returning to work causes panic attacks . . . ." (T 517)  Dr. Greengrass also noted that Plaintiff had no restrictions in activities of daily living. Dr. Greengrass concluded that Plaintiff "will probably never be able to return to a job in pest control.  This is separate from the issue of can he work at any job." (Id.) (emphasis in original)

On January 12, 2013, Dr. Greengrass completed an evaluation stating that Plaintiff's signs and symptoms included: pervasive loss of interest in almost all activities; appetite disturbance with change in weight; generalized persistent anxiety; emotional withdrawal or isolation; decreased energy; off and on thoughts of suicide; sleep disturbance; and mood disturbance.  Plaintiff's impairments were anticipated to cause him to be absent from work more than three days per month, and his impairments were expected to last at least twelve months.  In terms of functional limitations, Dr. Greengrass opined that Plaintiff was markedly restricted in activities of daily living, experiences moderate difficulties in maintaining concentration, persistence, or pace, and had no episodes of decompensation. (T 530)

On March 13, 2013, Dr. Greengrass completed a Functional Capacity Questionnaire indicating that Plaintiff's impairment had lasted or could be expected to last at least twelve months. Additionally, Plaintiff's signs and symptoms included impaired sleep, depression, and anxiety.  On average, Dr. Greengrass opined that Plaintiff's impairments would cause him to be absent from work more than three days per month. (T 532)

> In his decision, the ALJ afforded limited weight to Dr. Greengrass' opinion:[3]
> Dr. [Greengrass] opined that the claimant could "probably never" return to a job in pest control but considered the issue separate from whether the claimant could return to <u>any</u> work. He indicated that his focus on therapy was finding alternative work for the claimant. Later he opined a "guarded prognosis" and estimated that the claimant would likely miss greater than three days of work a month because of his impairments or treatment. The commencement of treatment, on or about the alleged onset date, the progress records of Dr. [Greengrass], and Vocational Expert testimony provide preponderate support that the claimant could not do his past work. However, the record fails to provide preponderant support that the claimant would likely be absent three or more days a month. As detailed above, the doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant and seemed to accept uncritically as true most, if not all, of what the claimant reported. Yet, the anxiety towards all employment contrasts sharply with the other evidence of record, which renders it less persuasive. The relatively mild mental status findings and GAF scores from Dr. Obegron and Dr. Klippel provide a few examples of that contrasting evidence and support the limitations determined in the residual functional capacity.

(T 99-100)

Plaintiff contends that the ALJ's reasoning is insufficient for discrediting Dr. Greengrass' opinion.[4] However, the ALJ's decision to afford little weight to the opinion is supported by substantial evidence and is in conformity with the appropriate regulations. Here, the ALJ noted that Dr. Greengrass appeared to rely heavily upon Plaintiff's subjective reports. Additionally, the ALJ found that Dr. Greengrass' opinion that Plaintiff would miss more than three days of work per month was not supported with a basis for the conclusion.

Also, the ALJ appropriately referred to other records undermining Dr. Greengrass' opinion. Specifically, the ALJ cited to treatment records from the Veterans Affairs Medical Center. (T 461-

---

[3] The ALJ erroneously refers to Dr. Greengrass as "Dr. Greengas."

[4] The Court notes that Plaintiff's conclusion regarding this argument references a Dr. Montes treating Ms. McIntosh. (Dkt. 29 at 12) Plaintiff's counsel is reminded to proofread prior to submitting memoranda.

507) Plaintiff was treated by Demian Obregon, M.D. ("Dr. Obregon") and X ("Dr. Klippel") between 2011 and 2013. Plaintiff's mental status examinations were frequently normal. Additionally, Plaintiff's assigned Global Assessment of Functioning ("GAF") Scale scores ranged from 60 to 65, indicating only mild to borderline moderate restrictions.[5] (T 468, 472, 476, 480, 484, 488, 498, 506) His treatment plan referred to additional therapy, including continued individual therapy with Dr. Greengrass and medication management.

Accordingly, the ALJ provided good cause for affording minimal weight to Dr. Greengrass' opinions, properly considered the record evidence, and weighed and resolved any conflicting evidence.

**B.**   Plaintiff alleges that substantial evidence does not support the ALJ's finding that Plaintiff's subjective complaints were not fully credible.

The Eleventh Circuit has established a three-part "pain standard" to use when a claimant attempts to establish disability through testimony of pain or other subjective symptoms. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam). A plaintiff must show: (1) objective medical evidence of an underlying medical condition; and either (2) the objective medical evidence substantiates the severity of the pain from the condition; or (3) the objectively determined medical condition is of sufficient severity that it would be reasonably expected to produce the pain alleged. Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986) (per curiam).

---

[5] The GAF scale describes an individual's overall psychological, social, and occupational functioning as a result of mental illness, without considering any impaired functioning due to physical or environmental limitations. Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") at 32 (4th ed. text rev. 2000). A GAF score represents a subjective determination (based on a scale of 100 to 1) of a patient's overall level of functioning. Id. A GAF score of 41–50 indicates serious symptoms; a score of 51–60 indicates moderate symptoms; and a score in the range of 61–70 indicates mild symptoms. Id. at 32–34.

Where an ALJ declines to credit a claimant's testimony regarding subjective complaints, the ALJ must "articulate explicit and adequate reasons for doing so." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (per curiam). A clearly articulated credibility finding that is substantially supported by the record will not be overturned. Id. at 1562 (citation omitted). A lack of an explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. Id. (citation omitted).

While finding that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely credible. (T 98)

Although Plaintiff alleges that the ALJ's credibility finding "is still nothing more than boiler plate type language, and does not offer enough reasoning to support the ALJ's determination that the claimant was not credible" (Dkt. 29 at 16), an ALJ is not required to use "particular phrases or formulations" in making a credibility determination. See generally Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation and internal quotation marks omitted).[6]

The ALJ explicitly stated his reasons for finding Plaintiff's subjective pain complaints not fully credible. He noted that Plaintiff's activities of daily living are not limited to the extent one would expect given Plaintiff's complaints of disabling symptoms and limitations. (T 99) The ALJ explained that Plaintiff handled his personal care, drove a vehicle, cared for his dogs, and played computer games. The ALJ also cited Dr. Greengrass' finding that Plaintiff had no problems with activities of daily living. (Id.)

---

[6] Also, as the Commissioner notes, the Circuit has found the use of boilerplate language is harmless when "the ALJ has otherwise explained his conclusion adequately." Filus v. Astrue, 694 F.3d 863, 868 (7th Cir. 2012).

The ability to engage in everyday activities of short duration such as housework or fishing does not disqualify a claimant from receiving disability benefits. Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997). However, the Commissioner may properly rely on a claimant's daily activities, among other evidence, in determining whether a claimant is entitled to disability benefits. Hoffman v. Astrue, 259 F. App'x 213, 219 (11th Cir. 2007) (per curiam) (unpublished) (citations omitted).

The ALJ also observed that, despite Plaintiff's allegations of disabling symptoms and limitations related to his anxiety, Plaintiff had not required any inpatient psychiatric treatment. (Id.) Additionally, the ALJ noted progress notes from the Veterans Affairs Medical Center that showed relatively mild mental status findings and GAF scores that undermined the other evidence. The ALJ concluded, "In the end, the reported activities of daily living, the relatively mild mental status findings and the sustained high GAF scores, among other findings support the residual capacity listed above. Moreover, such evidence outweighs the subjective reporting of generalized anxiety towards all work." (Id.)

The Court cannot reweigh the evidence as long as substantial evidence supports the ALJ's conclusions, as in this case. As the ALJ clearly articulated reasons for not fully crediting Plaintiff's allegations, and substantial evidence supports the ALJ's credibility determination, this issue does not entitle Plaintiff to relief. See Allen v. Sullivan, 880 F.2d 1200, 1202-03 (11th Cir. 1989) (per curiam).

**C.** Plaintiff argues that the ALJ did not fully accommodate all of his limitations resulting from his moderate limitations in social functioning and concentration.

As the ALJ limited Plaintiff to unskilled work (T 97), this limitation implicitly

accommodates Plaintiff's moderate difficulties with concentration, persistence, or pace. See Winschel, 631 F.3d at 1180; see also Lee v. Comm'r, Soc. Sec. Admin., 551 F. App'x 539, 541 (11th Cir. 2014) (per curiam) (unpublished) ("The ALJ adequately accounted for all of Lee's impairments in the hypothetical posed to the VE because he implicitly accounted for Lee's limitations in concentration, persistence, and pace when he imposed a limitation of simple work.").

Additionally, to accommodate Plaintiff's moderate difficulties with social functioning, based on Plaintiff's self-reported limitation and the report of Plaintiff's wife, the ALJ limited Plaintiff to jobs that do not involve interaction with the public and no less than occasional interaction with co-workers and supervisors. (T 100) This limitation properly addresses Plaintiff's moderate difficulties in social functioning. See, e.g., Washington v. Soc. Sec. Admin., Comm'r, 503 F. App'x 881, 883 (11th Cir. 2013) (per curiam) (unpublished) ("The ALJ took account of Washington's moderate limitations in social functioning by asking the VE a hypothetical question that included the restriction that Washington was limited to jobs that involved only occasional interaction with the general public and coworkers, a limitation that evidence supported.").

Accordingly, the ALJ adequately accommodated all of Plaintiff's limitations resulting from his moderate limitations in social functioning and concentration

**D.** Plaintiff also alleges that the ALJ relied on an incomplete hypothetical posed to the VE by failing to include limitations related to Plaintiff's mental limitations, including moderate limitation in the area of concentration, persistence, or pace.

Once a claimant satisfies his initial burden of showing that he cannot do past work, the testimony of a vocational expert is generally required to determine whether the claimant's residual functional capacity permits him to perform other work. Chester v. Bowen, 792 F.2d 129, 131-32

(11th Cir. 1986) (citation omitted). The Commissioner may use this vocational testimony to show that there are other jobs in the national economy which the plaintiff can perform. Id. In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999) cert. denied, 529 U.S. 1089 (2000) (citing McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987) (per curiam)). The ALJ is required to include only those restrictions he recognizes in the hypothetical question to the vocational expert. See Bowling v. Shalala, 36 F.3d 431, 436 (5th Cir. 1994) (citation omitted).

> Here, the ALJ posed the following question to the VE:
>
> [A]ssume a hypothetical individual of claimant's age, education and work experience, who's limited to medium work. This is a hypothetical individual whose work is limited to simple, unskilled work. This is an individual who is limited to a low stress job, defined as only occasional decision making required, only occasional changes in the work setting. This is an individual who is not capable of interacting with the public, only have occasional interaction with coworkers. I'm going to find on the record that this person cannot go back to their past work in pest control. So I'm not asking about past work, so would there be any jobs in the national or regional economies such a hypothetical individual with those limitations would be able to perform?

(T 41)

As discussed above, substantial evidence supports Plaintiff's RFC assessment. The ALJ appropriately accommodated Plaintiff's mental limitations by limiting Plaintiff to simple, unskilled work, precluding Plaintiff from interaction with the public, and limiting Plaintiff's interaction with co-workers. Accordingly, the ALJ's hypothetical question was complete and properly included all of Plaintiff's limitations. This issue does not entitle Plaintiff to relief.

## **Conclusion**

The ALJ's decision is supported by substantial evidence and the proper legal principles.

The decision of the Commissioner should therefore be affirmed.

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1) The decision of the Commissioner be **AFFIRMED** and the case **DISMISSED**, with each party to bear its own costs and expenses; and

(2) The Clerk of Court enter final judgment in favor of Defendant consistent with 42 U.S.C. §§ 405(g) and 1383(c)(3).

**Date: June 10, 2015**

_____
ELIZABETH A JENKINS
United States Magistrate Judge

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C. § 636(b)(1).

Copies to:

Counsel of Record

District Judge